T.C. Memo. 2008-111

UNITED STATES TAX COURT

MIKE KURTZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3130-06.                    Filed April 22, 2008.

<u>Gregory L. White</u>, for petitioner.

<u>Lisa M. Oshiro</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $10,823
and $16,899 in petitioner's Federal income taxes for 2001 and
2002, respectively.

After concessions by the parties, the sole issue remaining
for decision is whether petitioner is entitled to deductions of
the full Federal per diem rates for meals and incidental expenses

(M&IE) or whether those deductions are limited to 50 percent of the applicable M&IE rates for the years in issue.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated under Rule 122. The relevant stipulated facts are incorporated as our findings by this reference. Petitioner resided in Florida at the time he filed his petition. However, the parties agree that petitioner's tax home for the years in issue was Dutch Harbor, Alaska.

During the years in issue, petitioner worked as an engineer on commercial fishing vessels operated off the coast of Alaska. In 2001 petitioner worked as an independent contractor on the Storm Petrel, a fishing vessel owned by a subsidiary of Icicle Seafoods, Inc. (Icicle). In 2002 he worked as an independent contractor on the Poseidon, a fishing vessel owned by Poseidon Fisheries, L.L.C. (Poseidon Fisheries).

In 2001 and 2002 the Storm Petrel and the Poseidon both engaged in regular patterns of commercial fishing activity. The vessels would harvest fish in the Bering Sea, off the coast of Alaska. They would then transport the fish to a fish processor. These fishing trips normally lasted 4 or 5 days, but occasionally

lasted more than 1 week. While he was working aboard the Storm Petrel or the Poseidon during the years in issue, the companies petitioner worked for purchased, prepared, and served meals to petitioner and other crew members.

In 2001 petitioner worked a total of 231 days aboard the Storm Petrel. The Storm Petrel's home port in 2001 was Dutch Harbor, Alaska. During 2001 petitioner received compensation from Icicle equal to 5 percent of the catch from the Storm Petrel. Icicle deducted $25 per day from petitioner's compensation for food expenses. In 2002 he worked a total of 145 days aboard the Poseidon. The Poseidon's home port in 2002 was also Dutch Harbor, Alaska. During 2002 Poseidon Fisheries also deducted $25 per day from petitioner's compensation for food expenses. Poseidon also calculated petitioner's compensation in 2002 with reference to the Poseidon's catch. Petitioner was not reimbursed for meals or incidental expenses incurred while working on either the Storm Petrel or the Poseidon during the years in issue.

On Schedule C, Profit or Loss From Business, of his 2001 return, petitioner deducted $8,763 for supplies and $31,205 for other expenses as follows:

| Type of expense | Amount deducted |
|---|---|
| Provisions | $22,705 |
| Cannery expense | 8,500 |

On Schedule C of his 2002 return, petitioner again deducted $8,763 for supplies and $44,070 for other expenses as follows:

| Type of expense | Amount deducted |
|---|---|
| Provisions | $27,550 |
| Cannery expense | 8,500 |
| Telephone | 1,840 |
| License | 180 |
| Repairs | 6,000 |

It is unclear from the record how petitioner calculated any of these expenses or what amount he deducted on his returns for the years in issue for meals and incidental expenses.

## Discussion

Section 162(a)(2) permits taxpayers to deduct all ordinary and necessary business expenses paid or incurred during the taxable year and specifically includes traveling expenses (including amounts expended for meals and lodging other than amounts that are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business. The parties agree that petitioner may calculate his deductions for meals and incidental expenses using the Federal M&IE rates applicable to Dutch Harbor, Alaska, for the days he was working on the Storm Petrel or the Poseidon during the years in issue. However, respondent argues that petitioner's allowable deduction

for meals is limited to 50 percent of the portion of the per diem rate allocated to meal expenses.

Although ordinary and necessary business expenses are generally deductible under section 162, section 274(n)(1)(A) provides that the amount allowable as a deduction for any meal expense is limited to 50 percent of the amount of the expense that would otherwise be allowable.  Section 274(n)(2)(E) provides an exception to the 50-percent limitation on the deductibility of meal expenses when the expense is for meals required by any Federal law to be provided to crew members of a commercial vessel.

Petitioner asserts that he qualifies for the exception under section 274(n)(2)(E) and may deduct the full M&IE per diem rates applicable to Dutch Harbor, Alaska, for the days he was working in 2001 and 2002.  He argues that 18 U.S.C. section 2191 (2000), a criminal statute prohibiting cruel treatment of seamen, is a Federal law that requires food or beverages to be provided to all crew members on U.S. vessels.  Therefore, petitioner contends that he qualifies for the exception under section 274(n)(2)(E) and may deduct the full M&IE per diem rates for the days he was working aboard the Storm Petrel and the Poseidon during the years in issue.

Title 18 U.S.C. section 2191 provides as follows:

Whoever, being the master or officer of a vessel of the
United States, on the high seas, or on any other waters

> within the admiralty and maritime jurisdiction of the United States, flogs, beats, wounds, or without justifiable cause, imprisons any of the crew of such vessel, <u>or withholds from them suitable food and nourishment</u>, or inflicts upon them any corporal or other cruel and unusual punishment, shall be fined under this title or imprisoned not more than five years, or both. [Emphasis added.]

Petitioner interprets the prohibition against withholding food from crew members, an express form of cruel and unusual punishment under the statute, as a Federal law establishing an affirmative duty of the master, officer, and owner of a vessel to provide food or beverages to crew members on any U.S. vessel, including fishing vessels like the <u>Storm Petrel</u> and the <u>Poseidon</u>.

The scope and purpose of 18 U.S.C. section 2191 is to protect seamen from cruel and unusual punishment such as flogging, beating, unjust imprisonment, and other forms of severe physical mistreatment. In this context, the criminal prohibition against withholding food and nourishment from a sailor cannot be interpreted as the imposition of an affirmative duty to provide food or beverages to all seamen. See H. Conf. Rept. 100-1104 (Vol. II), at 134-135 (1988), 1988-3 C.B. 473, 624-625 ("The percentage reduction rule does not apply to an otherwise allowable deduction for expenses of food or beverages that (1) are required by Federal law (46 U.S.C. sec. 10303) to be provided to crew members of a commercial vessel, or (2) are provided to crew members of a commercial vessel operating on the Great Lakes, the St. Lawrence Seaway, or the U.S. inland waterways that is of

a kind that would be required by Federal law to provide food or beverages to crew members if operated at sea. (Thus, for example, the provision for full deductibility would not apply with respect to fishing boats or foreign vessels operating on the inland waterways.)" (Emphasis added.)).

Moreover, there is a separate statutory provision that imposes an affirmative duty to provide adequate nourishment to seamen, but it specifically excludes fishing vessels from its application. Title 46 U.S.C. section 10303 (2000) provides in relevant part:

> (a) A seaman shall be served at least 3 meals a day that total at least 3,100 calories, including adequate water and adequate protein, vitamins, and minerals in accordance with the United States Recommended Daily Allowances.
>
> *         *         *         *         *         *
>
> (c) This section does not apply to a fishing or whaling vessel or a yacht.

Petitioner argues further that maritime common law requires that food or beverages be provided to the crew of fishing vessels. Petitioner generally claims that maritime law requires all vessels to be "seaworthy", and that "seaworthiness" includes an obligation that adequate food be furnished to crew members. However, 46 U.S.C. section 10901 (2000), which addresses proceedings on unseaworthiness, specifically states that it is not applicable to fishing or whaling vessels or yachts. Thus, regardless of whether the "seaworthiness" doctrine includes an

obligation to provide food to crew members, such doctrine is not applicable to fishing vessels like the <u>Storm Petrel</u> and the <u>Poseidon</u>.  Furthermore, Federal law specifically tailored to fishing voyages is codified in 46 U.S.C. sections 10601 through 10603 (2000) and does not contain any requirement that seamen employed on fishing vessels be provided with food or beverages.

Petitioner has not shown that he qualifies for any exception to the 50-percent limitation on deductions for food or beverage expenses under section 274(n)(1)(A).  Thus, petitioner's deductions for meal expenses in the years in issue are limited to 50 percent of the applicable per diem rates.  In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing and the stipulation as to other adjustments,

<u>Decision will be entered under Rule 155</u>.
